### J. W. BELL v. WILLIAM KUYKENDALL.

#### No. 165.

1. **Trustees of School Community—Teachers' Contracts.**—In relation to contracts made with teachers by trustees of a school community prior to the amendment of April 15, 1891 (General Laws Twenty-second Legislature, page 97), the law was silent as to the approval of the same by the county judge. His approval was only required of the checks of the trustees upon the county treasurer.

2. **Same—Case Adhered to.**—It was not intended by the Legislature to confer upon the county judge the power of controlling the contract by the trustees with the teacher under the community school system. Caviel v. Coleman, 72 Texas, 553, adhered to.

3. **Same—Case in Judgment.**—September 4, 1889, Bell signed a contract with the trustees of school district number 1, in McMullen County, in which the community system was in force, to teach a school for "five months, more or less," commencing on third Monday of the month, at $75 per month. The next day, September 5, an order was made apportioning the funds of district number 1 among three schools in the community, according to the number of pupils in

attendance the first week. Bell was not present, nor did he assent to the order. He taught the session of five months. The trustees gave him an order for each month's salary. The salary for the first three months was paid. The county judge refused to approve the orders for the salary for the fourth and fifth months. The teacher had not been notified to quit at the end of three months, by which time the funds allotted to his school had been exhausted. Mandamus by the teacher to compel the county judge to approve the checks of the trustees for the fourth and fifth months. *Held:*

1. The contract between trustees and teacher became binding when signed by the trustees, and could not be changed without the consent of the teacher.

2. When there are funds on hand to the credit of a community, and some contracts with teachers have been satisfied and others have not, the trustees can draw against the fund to discharge legal contracts not satisfied, whether there had been an apportionment of the community funds among the schools or not; and in such cases the judge would be required to approve the checks of the trustees.

Appeal from McMullen. Tried below before Hon. D. P. Marr.

*T. S. Archer* and *M. F. Lowe*, for appellant.— The county judge is authorized by law to apportion the school money to each community, and after such apportionment has no further control of the money thus apportioned, any further than to approve vouchers drawn by the trustees upon the fund of their respective communities; and under the maxim, inclusio unius exclusio alterius est, the trustees and county judge have no authority to reapportion the fund among the different schools in the community. Sayles' Civ. Stats., arts. 3739, 3772, 3773, 3746, 3740g, 3776, 3735, 3750.

No brief on file for appellee.

COLLARD, Associate Justice.— Suit by J. W. Bell, appellant, for writ of mandamus to require William Kuykendall, the appellee, to approve two checks, numbered 4 and 5, for $75 each, drawn by a majority of the three trustees of school community number 1 in McMullen County, upon the treasurer of the county, in favor of appellant as teacher of school number 1 in the community, to pay balance of his salary due for two months.

Plaintiff alleges, that on the 4th day of September, 1889, he entered into a written contract with M. H. Martin, Henry Martin, and D. W. Kay, trustees of the public free school of community number 1 in McMullen County, for a term of five months, more or less, at a salary of $75 per month, which was approved by the defendant on the 5th day of September, 1889, which contract is attached to the petition and made a part of the same; that he commenced teaching the school on the 16th day of September, 1889, and taught the same five consecutive scholastic months; that he was paid for the first three months by checks of the trus-

tees on the county treasurer, approved by defendant as county judge; and that a majority of the trustees—M. H. Martin and Henry Martin—drew their checks numbers 4 and 5, January 20 and February 17, 1890, for $75 each, the amount to which plaintiff was entitled, upon the county treasurer in plaintiff's favor for the last two months of the school taught under the contract, which were duly presented to defendant, county judge, supported by affidavit of petitioner, and that defendant refused to approve the same, whereby plaintiff was unable to draw the amount due him for teaching under his contract, which amount was in the hands of the treasurer and ready to be paid upon the approval of the checks by defendant.   Prayer for writ of mandamus requiring defendant to approve the checks, etc.

Defendant answered, that on the 4th day of September, 1889, the trustees of school community number 1, with the consent and approval of defendant, established and organized in the community three separate schools, designating them as schools numbers 1, 2, and 3, and elected plaintiff principal of school number 1, W. A. Hill principal of school number 2, and M. J. Henessy principal of school number 3; that before contracting with the elected teachers, the trustees and defendant agreed that the school fund appropriated by the county judge to school community number 1 should be reappropriated and apportioned among the three schools in proportion to the number of scholars in scholastic age which should attend the different schools, each scholar to receive the same amount from the school fund; that the county judge was then directed to procure from the principals of each school at the end of the first week of the term, and according to the number of pupils in each school as so shown by the registers, to reapportion the funds belonging to school community number 1; that upon this basis the contracts with the teachers of each school were then, on the 5th of September, 1889, made by the trustees and approved by the county judge.   After the schools had been in progress a week, defendant procured the registers of schools, and ascertained that the enrollment of pupils within scholastic age was, in school number 1, 24 scholars; number 2, 64 scholars; and number 3, 20 scholars; and upon this basis, as directed by the trustees, he made the reapportionment of the funds, giving to each scholar the same amount; to school number 1, $240.96; school number 2, $652.60; and school number 3, $200; that he promptly approved vouchers as presented to him by the principals of the respective schools as signed by the trustees, until plaintiff presented his voucher number 4, which he refused to approve, because the money set apart to school number 1 was exhausted; and for the same reason he refused to approve his voucher number 5.

Defendant further answered, that the trustees of the community have continued to recognize and act upon the reapportionment made, to sign vouchers directing the county treasurer to pay out the funds according

to the apportionment, designating the schools by their proper numbers, as shown by vouchers attached to the answer, marked A, B, and C; that in the reapportionment each scholar in scholastic age received its pro rata share of the funds, and that if plaintiff should prevail in this suit and recover the amount of his vouchers numbers 4 and 5, the scholars in school number 1 would each receive $15.65 per capita, while those of school number 2 would receive only $7.90 per capita, and those of school number 3 only $7.30 per capita.

It is further alleged, that plaintiff contracted to teach school number 1 for a term of five months more or less, and having taught it three months, and received pay for the time, which has exhausted the fund appropriated to that school, the contract with him has been fully complied with; that plaintiff had full knowledge of the facts when he received his salary for the first three months, and continued to teach, knowing that there were no funds with which to compensate him. Defendant prays for judgment that the writ of mandamus be denied.

Verdict and judgment were rendered for the defendant, from which plaintiff appealed.

Plaintiff held a first class certificate as a teacher in McMullen County. The contract between him and the trustees, by which he was employed, and agreed to teach school number 1 in school community number 1 in McMullen County, signed by all three of the trustees, is of date September 4, 1889. His term was fixed at "five months, more or less," commencing on the third Monday in the month, and he was to teach at a salary of $75 per month. The contract was approved by the county judge, county superintendent ex officio, on the 5th day of September, 1889. The trustees of the community number 1 were D. W. Kay, M. H. Martin, and Henry Martin.

Two of the trustees—the two Martins—testify, that on the 2nd or 3rd day of September, 1889, the trustees met and elected plaintiff, J. W. Bell, principal of white school community number 1, and M. J. Hennessy principal of the Mexican school in the community; and on the 4th, the next day, a majority of the trustees (the two Martins) made and signed the contract with plaintiff, and he being present also signed the same; that on the next day (the 5th) the county judge, defendant Kuykendall, met with them, and advised them to divide the community into three schools, two schools for the white children and one for the colored or Mexican children; and also informed them that he would apportion the school funds of the community between the schools according to the number of scholars attending each school the first week of the term.

It does not appear from the testimony of the two Martin trustees that they finally agreed that the community should be divided into three schools, but it was their intention, as trustees, that the money to the

credit of school community number 1 should remain in a common fund, to be drawn upon by the trustees to pay the teachers under contract. They so testify substantially, and say that it was upon this basis that they contracted with plaintiff; that he was not present when, on the 5th, the judge approved his contract.

Henry Martin testified, that he told the county judge at the meeting on the 5th that if it was legal to divide the community into three schools and prorate the funds to them, he was willing to do so; that he asked the judge to write to the State Superintendent to learn if it was legal, and he promised to do so, but that he did not.

The inference to be drawn from the testimony of these two trustees is, that there was no agreement to divide the school community into more than one white school, and that there was no agreement by the trustees that the funds of the community were to be prorated according to numbers taught in each school. One of them testified, that it was his understanding that school number 2, a white school, was only a part of school number 1, only to be taught in a different building, as some of the patrons were not satisfied with Bell as a teacher.

Both of these trustees testify that the words " more or less" were put in the contract because it was not known at the time how much money there was to the credit of community number 1.

On the other hand, the county judge and the trustee Kay testified, that at the meeting on the 5th the trustees, upon the ruling of the county judge that it was legal to have several schools in one community, and that it was in the discretion of the trustees, established the three schools, and agreed that the funds should be apportioned as alleged by defendant, and directed him to so apportion them, which was done by him in the manner and with the result alleged in his answer; and that then it was that the three contracts were made with the three teachers, one for each school, and approved by the county judge.

The judge wrote the numbers of the schools in the contracts, he says, at the instance of the trustees. Plaintiff taught school number 1 something over five months; was paid on his contract, on checks of the trustees, $75 per month for the first three months, but the judge refused to approve his last two checks for the same salary, upon the ground that there was not sufficient funds to the credit of school number 1 to pay him. In the latter part of February, 1890, there was to the credit of school community number 1 at least the sum of $200, more than enough to pay the unpaid checks of plaintiff, but there was only about $15 to the credit of school number 1. The county treasurer at first refused to credit the funds of the community to the three schools as directed by the county judge, but afterwards did so—to school number 1 the sum of $240.96, to number 2, $652, and to school number 3, $300.80—and as the checks were presented against the fund of each school they were paid out of the fund

credited to it. Nearly all of the $200 on hand in the treasury was to the credit of schools numbers 2 and 3.

Plaintiff was not notified by the trustees to close his school. He was not present when his contract was approved, and did not consent to the apportionment of the funds, if it was agreed to by the trustees, but it seems he was informed of it by the county judge during the second week of his school. He testifies that he taught thirty-one scholars, but the county judge testified that he only had twenty-four in scholastic age enrolled at the end of the first week of his school. It does not appear that the thirty-one scholars were from school community number 1, or that they were all of scholastic age.

There is no brief for appellee.

Appellant assigns as error that part of the charge of the court which, in effect, tells the jury that the contract of the trustees did not take effect until it was approved by the county judge.

It will be readily seen that the time when the contract took effect, or when it became a valid contract, is an important fact in the case, as bearing upon the effect to be given to the reapportionment of the funds belonging to the community, whether before or after the contract was complete.

McMullen County is exempt from the district free school system; its schools are regulated by the laws applying to the community system. Gen. Laws, 1889, p. 59; Gen. Laws, 1887, p. 125; Sayles' Civ. Stats., art. 3764.

In relation to contracts made with teachers by the trustees of a school community, at the time the contract was made with plaintiff, the law was silent as to the approval of the same by the county judge; it required only that the check of the trustees upon the treasurer be approved by him. Sayles' Civ. Stats., arts. 3772, 3773, 3774, 3776.

The general act under the district system, from which McMullen County is exempt, requires the county judge's approval of all contracts with teachers as well as all vouchers against the school fund.

From the fact that the approval of the contract was omitted in relation to community schools, and the approval of the check retained, it was inferred by the Supreme Court, construing the law, that it was not intended by the Legislature to confer upon the county judge the power of controlling the contract under the community school system. Caviel v. Coleman, 72 Texas, 553.

Following this authority, it must be held, that the court below was in error in holding that the contract with plaintiff did not have effect until it was approved by the county judge. The statute has been amended; it now requires that the county judge approve contracts of teachers of community as well as district schools. Gen. Laws 1891, p. 97.

It will not be necessary for us to discuss all the assignments of error in the order in which they are presented in appellant's brief, but we will

state our views of the law governing the rights of the parties upon the main issues raised.

The trustees had the power to determine how many schools should be taught in the community (Sayles' Civil Statutes, article 3746), and to make the contract with the plaintiff to teach for the community or for one school therein, if more than one had been established, provided the contract did not create a deficiency debt against the community (Id., articles 3746 and 3772), and provided he.was not allowed more as a salary than $2.50 per month per capita of scholars registered in the community. Id., arts. 3773, 3774. After the contract was entered into and signed by him and the trustees, it became a binding obligation, and could not be changed without his consent.

If it should be true that the trustees established three schools in the community, one for Mexican and two for white children, and agreed that the county judge should apportion the funds of the community according to the number of scholars attending the respective schools during the first week, and the contract was made with Bell upon such basis, no sound reason could be given why the contract would not be valid, if it did not allow him as compensation more than could be allowed under the law, and created no deficiency debt against the community; but after the funds apportioned to his school had been practically exhausted by part compliance with his contract, the trustees could not pay the balance called for in his contract drawn in his favor against the funds apportioned to the other schools so as to interfere with legal contracts made with the other teachers. But if the contracts with the teachers of other schools were satisfied, or there was to the credit of such schools more money than would be sufficient to satisfy such contracts, the trustees had the power, and it became their duty, to use the same in complying with their contract with the plaintiff. Of course, this would also be the rule if there had been no apportionment of the funds of the community to the several schools. When there are funds on hand to the credit of a community, and some contracts with teachers have been satisfied and others have not, the trustees can draw against it to discharge legal contracts not satisfied, whether there has been an apportionment of the community funds among the schools or not, and in such case the county judge would be required to approve the checks of the trustees. Id., 3776.

The law makes it the duty of the county judge to apportion the school fund of his county among the districts or communities according to scholastic census (Id., 3739), but there is no such provision as to apportionment among the schools of a community. The trustees of communities are empowered to employ teachers at such price as may be agreed on; the salary agreed on for a teacher with a first class certificate not to exceed $75 per month, second class $50, and third class $30. It was evidently not intended by the law that there should be equality in the distribution

of the funds belonging to a community either among the teachers or scholars, but that it should be left to the discretion of the trustees.

The trustees could not exercise this power so as to defeat their legal contracts already made or to render their performance impossible; but they could exercise it, and they would be bound to exercise it, if necessary to enable them to perform their legal contracts.

We are of opinion that the judgment of the court below should be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*

Delivered April 26, 1893.